**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

**MICHELLE BROWNING,**

**Plaintiff,**

**vs.**

**NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER; WINTRUST MORTGAGE, A DIVISION OF BARRINGTON BANK AND TRUST CO., NA; SFC PROPERTIES LLC; and STEVEN F. CASEBOLT,**

**Defendants.**

**Case No. 1:25-cv-01591-TWP-MG**

**NATIONSTAR MORTGAGE LLC AND WINTRUST MORTGAGE'S ANSWERS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES**

COME NOW Defendants Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar")[1] and Wintrust Mortgage, a Division of Barrington Bank and Trust Co., NA ("Wintrust," and collectively with Nationstar, the "Defendants"), by and through their counsel, Paulina Garga-Chmiel of Dykema Gossett PLLC, and respond to Plaintiff Michelle Browning's ("Plaintiff" or "Browning") Second Amended Complaint as follows:

**SECTION I – PARTIES**

1. Plaintiff Michelle Browning, formerly known as Michelle Ng, is a natural person and formerly a resident of Richmond, Wayne County, Indiana, at 3998 Emerald Circle, Richmond, Indiana 47374. Plaintiff is a United States veteran with service-connected PTSD, documented housebound status under 38 C.F.R. § 3.351, and is proceeding pro se in this matter.

---

[1] Rocket Mortgage, LLC is the successor by merger to Nationstar Mortgage LLC d/b/a Mr. Cooper effective February 2, 2026.

**ANSWER:** Defendants lack information sufficient to admit or deny the allegations of this paragraph.

2. Defendant Wintrust Mortgage, a Division of Barrington Bank & Trust Company, N.A., also operating as Veterans First Mortgage, NMLS No. 1770489, is a federally chartered national bank and VA-approved mortgage lender with its principal offices located at 9700 W. Higgins Road, Rosemont, Illinois 60018, and operational offices at 124 North Charles Lindbergh Drive, Salt Lake City, Utah 84116. Wintrust originated the subject mortgage loan on August 24, 2019, and served as the initial servicer of the loan.

**ANSWER:** Defendants admit that Wintrust originated the loan on or about August 24, 2019, that its principal offices are located in Rosemont, Illinois, and that Wintrust was the servicer of the loan. As for remaining allegations, denied.

3. Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper is a Delaware limited liability company with its principal place of business at 8950 Cypress Waters Boulevard, Coppell, Texas 75019. Nationstar assumed servicing of the subject mortgage loan in November 2022 and has since that time been responsible for all servicing, loss mitigation, collection, and credit reporting activities related to the loan. On consumer credit reports, Nationstar has variously reported the subject loan under the names "Wintrust Mortgage," "MrCooper/Wintrust MTG," and "Nationstar Mortgage."

**ANSWER:** Defendants admit that Nationstar is a Delaware limited liability company, and that the allegation in ¶3 of the Second Amended Complaint accurately reflects the address of Nationstar's principal place of business. As for remaining allegations, denied.

4. Defendant SFC Properties LLC is, upon information and belief, an Indiana limited liability company owned and controlled by Steven F. Casebolt. SFC Properties LLC was the

successful bidder at the July 17, 2025 sheriffs sale of Plaintiff's property at the price of $137,843.00, and is not a bona fide purchaser for value due to the lis pendens, Browning Family Trust Trustee's Deed, and pending federal litigation of record at the time of purchase and all subsequent transactions.

**ANSWER:** Defendants admit that SFC Properties LLC was a successful bidder at the foreclosure sale and lack information sufficient to admit or deny the remaining allegations of this paragraph.

5. Defendant Steven F. Casebolt is a natural person residing, upon information and belief, in Wayne County, Indiana, and is the owner and principal of SFC Properties LLC. Casebolt is an investor who personally directed the unlawful entry into Plaintiff's residence on September 23, 2025, and the conversion of Plaintiff's personal property.

**ANSWER:** Defendants lack information sufficient to admit or deny the allegations of this paragraph.

**SECTION II - JURISDICTION AND VENUE**

7. (Sic) This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under federal law including the Truth in Lending Act, 15 U.S.C. § 1601 et seq.; the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq.; the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.; the Fair Credit Reporting Act, 15 U. S.C. § 1681 et seq.; and the Fair Housing Act, 42 U.S.C. § 3601 et seq.

**ANSWER:** Defendants do not contest this Court's jurisdiction, but deny any violations of the referenced acts.

8. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims are so closely related to the federal claims that they form part of the same case or controversy.

**ANSWER:** Defendants do not contest this Court's supplemental jurisdiction.

9. Venue is proper in the Southern District of Indiana, Indianapolis Division, pursuant to 28 U. S.C. § 1391(b), as the subject real property is located in Wayne County, Indiana, which lies within this District, and a substantial part of the events giving rise to the claims occurred in this District.

**ANSWER:** Defendants do not contest venue.

## SECTION III - FACTUAL BACKGROUND

### A. THE 2019 LOAN ORIGINATION AND FRAUD IN THE INDUCEMENT

10. Plaintiff Michelle Browning purchased the real property located at 3998 Emerald Circle, Richmond, Indiana 47374 (the "Property") on September 17, 2018, when a Warranty Deed was recorded with the Wayne County Recorder as Document No. 2018007624. On the same date, Plaintiff executed a VA-guaranteed purchase mortgage loan in the original principal amount of $127,500.00 at a fixed interest rate of 5.25%, recorded as Document No. 2018007625, with a monthly payment of $924.15.

**ANSWER:** Upon information and belief, Defendants admit that Plaintiff purchased the subject property in 2018 and that she secured a mortgage for that property. As for remaining allegations, Defendants lack information sufficient to admit or deny the allegations of this paragraph.

11. Prior to the August 2019 refinance, Plaintiff resided at the Property as its owner from September 2018, when she obtained the VA-guaranteed purchase loan described in paragraph 10. On August 24, 2019, Plaintiff closed on a VA-guaranteed refinance of the subject mortgage

loan, originated by Defendant Wintrust through its Veterans First Mortgage division (NMLS No. 1770489), in the original principal amount of $129,634.00 at a fixed rate of 3.69%, on a thirty-year term, with a scheduled monthly payment of $738.96 The new mortgage was recorded with the Wayne County Recorder on September 4, 2019, as Document No. 2019007104. The 2018 purchase mortgage was simultaneously released through MERS and recorded as Document No. 2019007179 on September 5, 2019, confirming that the prior lien was fully extinguished by the refinance. On November 14, 2022, Wintrust recorded an Assignment of Mortgage with the Wayne County Recorder as Document No. 2022011172, transferring the subject mortgage from MERS as nominee to defendant Wintrust.

**ANSWER:** Defendants admit the allegations of this ¶ other than whether Plaintiff resided at the property prior to September 2019 as they lack information sufficient to admit or deny that allegation.

12. Plaintiff's income consisted of VA disability benefits arising from her service-connected PTSD. On the Closing Disclosure prepared and issued by Wintrust in connection with the August 24, 2019 transaction, Plaintiff's VA disability income was deliberately mischaracterized and labeled as "retirement income." This mischaracterization was not a clerical error. VA disability income and retirement income carry materially different legal, tax, and underwriting implications.

**ANSWER:** Denied as to allegations related to the Closing Disclosure. As for Plaintiff's source of income, Defendants lack information sufficient to admit or deny that allegation.

13. In addition to the mischaracterization of Plaintiff's disability income, the loan officer who handled Plaintiff's transaction, Denitra Cosby, used undisclosed nanny income to Plaintiff's loan application without Plaintiff's knowledge or authorization. An email from Denitra

Cosby dated August 27, 2019 reflects her direct involvement in and responsibility for the subject transaction. Plaintiff was affirmatively told by the loan officer that this addition was permissible. It was not disclosed to Plaintiff, nor was it verifiable.

**ANSWER:** Defendants lack information sufficient to admit or deny the allegations of this paragraph.

14. The Closing Disclosure required by TILA to be personally provided to Plaintiff was not personally delivered. It was transmitted to Plaintiff by text message for digital signature. Plaintiff did not receive a properly delivered Closing Disclosure, and was not informed of the material disclosures required by 15 U.S.C. § 1638 and Regulation Z.

**ANSWER:** Defendants lack information sufficient to admit or deny the allegations as to method of delivery of Closing Disclosure. As for remaining allegations, Defendants state that the allegations of ¶ 14 contain legal conclusions to which no response is required. To an extent an answer is required, the 15 U.S.C. § 1638 and Regulation Z speak for itself and Defendants deny any characterization of those statutes that is inconsistent with their contents. Answering further, Defendants deny any violation of 15 U.S.C. § 1638 and Regulation Z.

15. The Truth in Lending Act, 15 U.S.C. § 1635, grants a borrower a three-day right of rescission following a residential mortgage transaction. Where material disclosures required by TILA are not accurately made, the rescission period is extended to three years from the date of consummation. Because the Closing Disclosure contained material misstatements (including the mischaracterization of income and the inclusion of undisclosed income), and because the Closing Disclosure was not properly delivered, the three-year rescission period applies, tolled by equitable principles arising from the concealment of the origination fraud which prevented Plaintiff from discovering the basis for rescission.

**ANSWER:** Defendants state that the allegations of ¶ 15 contain legal conclusions to which no response is required. To an extent an answer is required, 15 U.S.C. § 1635 speaks for itself and Defendants deny any characterization of that statute that is inconsistent with its contents. Answering further, Defendants deny any violation of 15 U.S.C. § 1635.

16. Plaintiff served a notice of rescission on June 12, 2025. Neither Wintrust nor Nationstar has responded to or honored the rescission notice.

**ANSWER:** Denied.

**B. PAYMENT HISTORY, COVID PERIOD, AND SERVICING TRANSFER**

17. Following consummation of the loan, Plaintiff made regular payments on the mortgage. In early 2020, coinciding with the national COVID-19 emergency declared on March 13, 2020, Plaintiff experienced financial hardship. Consumer credit reports furnished by Wintrust reflect delinquency notations of 30, 30, 90, and 60 days for January through April 2020. During the COVID national emergency, applicable VA guidance and the CARES Act required servicers to offer forbearance to borrowers who requested it and prohibited adverse reporting during any COVID accommodation. To the extent any forbearance was granted, Wintrust was required to report the account as current during the accommodation period.

**ANSWER:** Defendants currently lack of knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore deny them, and require proof thereof.

18. From approximately May 2020 through October 2022, the account was coded by Wintrust as "ND" (No Data) on consumer credit reports, indicating either a reporting cessation or a payment accommodation. During this period, no delinquency was reported. Beginning in

October 2022, Wintrust reported the account as 180 days delinquent, and in November 2022, as "Foreclosure Started" — despite simultaneously coding the account as "Payment Deferred."

**ANSWER:** Defendants currently lack of knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore deny them, and require proof thereof.

19. In November 2022, servicing of the subject mortgage loan was transferred from Wintrust to Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper. This transfer was not accompanied by proper notice to Plaintiff as required by 12 U.S.C. § 2605(b).

**ANSWER:** Denied. Answering further, Defendants assert that Wintrust has remained the servicer for the loan until completion of the foreclosure and Nationstar has acted as a subservicer for the loan.

**C. NOVEMBER 2022: THE PIVOTAL MONTH - DISABILITY DISCLOSURE, FORECLOSURE INITIATION, AND IHAF**

20. November 2022 was the most consequential month in this case. In that month: (1) servicing transferred from Wintrust to Nationstar; (2) Nationstar initiated an internal pre-court foreclosure action; (3) Plaintiff disclosed her service-connected PTSD and VA disability status to a Nationstar representative by telephone and requested assistance and accommodation; (4) the Indiana Homeowner Assistance Fund ("IHAF") became involved and began making payments on Plaintiff's behalf; and (5) derogatory foreclosure-related notations first appeared on Plaintiff's consumer credit reports.

**ANSWER:** Defendants deny that servicing of the loan ever transferred from Wintrust to Nationstar. As for remaining allegations, Defendants lack of knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore deny them, and require proof thereof.

21. Plaintiff called Nationstar in November 2022 and disclosed that she suffered from service-connected PTSD, that she was a VA-disabled veteran with documented housebound status under 38 C.F.R. § 3.351, and that she was seeking assistance and accommodation in connection with her mortgage. Rather than offering any accommodation, engaging in any loss mitigation discussion, or referring Plaintiff to a HUD-approved housing counselor, the Nationstar representative called Plaintiff a liar, denied her request for accommodation, and provided no information about available assistance programs.

**ANSWER:** Defendants admit there were communications with Plaintiff in November 2022. As for remaining allegations, upon information and belief, denied.

22. This November 2022 telephone call constitutes Plaintiff's formal request for disability accommodation under the Fair Housing Act, 42 U.S.C. §§ 3604 and 3605. Nationstar's response calling Plaintiff a liar and offering no accommodation — constitutes a denial of a reasonable accommodation request on the basis of disability.

**ANSWER:** Defendants state that the allegations of ¶ 22 contain legal conclusions to which no response is required. To an extent an answer is required, 42 U.S.C. §§ 3604 and 3605 speak for themselves and Defendants deny any characterization of these statutes that is inconsistent with their contents. Answering further, Defendants deny any violation of 42 U.S.C. §§ 3604 or 3605.

23. The Indiana Homeowner Assistance Fund (IHAF), a state program funded under the federal American Rescue Plan Act, became involved in November 2022 and began making payments on Plaintiff's behalf IHAF made payments through June 2023. Consumer credit reports confirm this: the monthly payment history for the Nationstar-reported account shows "OK" (current) for December 2022 and January through July 2023 — corresponding precisely to the IHAF payment period.

**ANSWER:** Defendants currently lack of knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore deny them, and require proof thereof.

24. Despite IHAF making payments on Plaintiff's behalf through June 2023, Nationstar simultaneously: (a) reported the account as 180 days delinquent on certain credit bureau tradelines; (b) failed to properly apply payments received; (c) continued to pursue foreclosure as a course of action; and (d) failed to treat the account as being in an active loss mitigation status, as required by 12 C.F.R. § 1024.41.

**ANSWER:** Defendants currently lack of knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore deny them, and require proof thereof.

**D. RESPA NOTICES OF ERROR AND SERVICING VIOLATIONS**

25. Plaintiff submitted two formal Notices of Error to Nationstar pursuant to 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35, disputing the account history, the application of payments, and the accuracy of the amounts claimed due and owing. Nationstar failed to adequately respond to and correct the errors identified in both Notices of Error.

**ANSWER:** Defendants admit that they received correspondence from Plaintiff. As for remaining allegations, denied.

26. The Indiana Attorney General's Office opened an investigation in 2023 and actively corresponded with Nationstar on Plaintiff's behalf. This correspondence constituted additional notice to Nationstar of the servicing errors, disputed amounts, and Plaintiff's disability status.

**ANSWER:** Defendants currently lack of knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore deny them, and require proof thereof.

27. Plaintiff filed complaints with the Consumer Financial Protection Bureau (CFPB) regarding Nationstar's inaccurate credit reporting and servicing failures. These CFPB complaints constitute further formal notice of the disputed information.

**ANSWER:** Admitted that the complaints were submitted. As to remaining allegations, denied.

28. Without disclosure to Plaintiff, without authorization in any loan document, and without the notice required by RESPA, Nationstar caused the following unauthorized fees to be added to and included in the state court foreclosure judgment:

(a) Escrow advances: $4,994.91;

(b) Property inspection fees: $450.00;

(c) Appraisal fees: $200.00;

(d) Title evidence fees: $340.00.

**ANSWER:** Defendants admit inclusion of the fees, but deny all remaining allegations.

29. None of these fees were disclosed in the original loan documents, were included in the payoff statements provided to Plaintiff, or were separately itemized and disclosed prior to their inclusion in the foreclosure judgment. Their inclusion constitutes a violation of Nationstar's duties under RESPA and Regulation X.

**ANSWER:** Denied.

**E. VA CONDITIONS PRECEDENT - COMPLETE FAILURE TO COMPLY**

30. The subject mortgage loan is a VA-guaranteed mortgage loan, identified on consumer credit reports as an "Individual VA Real Estate Mortgage." As a VA-guaranteed loan,

the loan and its servicing were subject to the requirements of 38 C.F.R. Part 36, the VA Servicer Handbook (M26- 4), and applicable VA circulars, all of which impose mandatory pre-foreclosure conditions precedent that Nationstar wholly failed to satisfy.

**ANSWER:** Defendants admit that the subject mortgage loan is a VA-guaranteed mortgage loan. As for remaining allegations, Defendants state that the allegations of ¶ 30 contain legal conclusions to which no response is required. To an extent an answer is required, 38 C.F.R. Part 36 speaks for itself and Defendants deny any characterization of that statute that is inconsistent with its contents. Answering further, Defendants deny any violation of 38 C.F.R. Part 36.

31. Nationstar did not possess Plaintiff's telephone number. A servicer that does not have the borrower's telephone number cannot have complied with the mandatory 30-day early contact requirement under 38 C.F.R. § 36.4350 and VA Servicer Handbook M26-4, Chapter 5. No documented attempt to contact Plaintiff within 30 days of the first missed payment exists in any record produced in this case.

**ANSWER:** Denied.

32. No face-to-face interview with Plaintiff was ever conducted, arranged, or attempted prior to the January 2025 foreclosure filing, in violation of 38 C.F.R. § 36.4350(g) and VA Servicer Handbook M26-4 § 5.04. At minimum, Nationstar was required to send a certified letter requesting an interview at least 30 days before initiating foreclosure. No such letter appears in any record. No representative of Nationstar visited Plaintiff's residence at 3998 Emerald Circle, Richmond, Indiana at any time prior to the foreclosure filing. This condition precedent was not satisfied.

**ANSWER:** Defendants state that the allegations of ¶ 32 contain legal conclusions to which no response is required. To an extent an answer is required, Defendants deny any violations of 38 C.F.R. § 36.4350(g) and VA Servicer Handbook M26-4 § 5.04.

33. Nationstar failed to evaluate Plaintiff for every available VA loss mitigation alternative including repayment plan, special forbearance, loan modification, VA Refunding, compromise sale, and deed in lieu of foreclosure — and to document in writing why each unavailable option was not pursued, in violation of 38 C.F.R. § 36.4819 and VA Servicer Handbook M26-4, Chapter 5. Nationstar provided no written loss mitigation evaluation to Plaintiff at any time prior to the January 2025 foreclosure filing. This condition precedent was not satisfied.

**ANSWER:** Denied.

34. Nationstar failed to notify the VA Regional Loan Center of Plaintiff's delinquency and of its intent to initiate foreclosure before filing the state court foreclosure complaint, in violation of 38 C.F.R. § 36.4817 and VA Servicer Handbook M26-4 § 5.07. No evidence in the state court record reflects that the VA Regional Loan Center was notified. This condition precedent was not satisfied.

**ANSWER:** Defendants state that the allegations of ¶ 34 contain legal conclusions to which no response is required. To an extent an answer is required, 38 C.F.R. § 36.4817 speaks for itself and Defendants deny any characterization of that statute that is inconsistent with its contents. Answering further, Defendants deny any violation of 38 C.F.R. § 36.4817 or that condition precedent was not satisfied.

35. Nationstar failed to make a reasonable effort to establish live contact with Plaintiff within 36 days of the date of delinquency, and failed to provide Plaintiff with a written notice of loss mitigation options within 45 days of the date of delinquency, in violation of 12 C.F.R. § 1024.39 (RESPA Regulation X). These conditions precedent were not satisfied.

**ANSWER:** Denied.

36. During the COVID-19 national emergency, VA Circular 26-20-12 and subsequent VA guidance prohibited servicers from initiating foreclosure on VA-guaranteed loans without first offering a COVID-19 forbearance. The consumer credit reports furnished by Nationstar and Wintrust bear the notations "Affected by natural or declared disaster" and "Payment Deferred," reflecting awareness of the COVID-related forbearance context. Despite this awareness, Nationstar initiated foreclosure without documenting that any COVID-19 forbearance was offered, evaluated, or declined. This condition precedent was not satisfied.

**ANSWER:** Defendants state that the allegations of ¶ 36 contain legal conclusions to which no response is required. To an extent an answer is required, denied.

**F. THE STATE COURT FORECLOSURE PROCEEDINGS**

37. On January 13, 2025, Nationstar's foreclosure counsel, acting as debt collector on behalf of Nationstar/Wintrust, sent Plaintiff a collection letter. On January 14, 2025 — one business day later, and before the 30-day dispute window required by 15 U.S.C. § 1692g had expired — counsel acting on behalf of Nationstar filed a foreclosure complaint in Wayne Superior Court II, Cause No. 89D02-2501-MF-000006, captioned *Wintrust Mortgage v. Michelle Ng, et al.*

**ANSWER:** Defendants admit that the referenced letter was sent and that the foreclosure case was initiated on January 14, 2025. As for remaining allegations, Defendants state that those allegations contain legal conclusions to which no response is required. To an extent an answer is required, denied.

38. The foreclosure complaint and accompanying Memorandum in Support of Summary and Default Judgment filed by Nationstar's foreclosure counsel contained multiple material misstatements, including: (a) the wrong loan origination date (stated as August 29, 2019;

the correct date is August 24, 2019); (b) inaccurate amounts; and (c) references to exhibits that did not establish a complete chain of title from the original lender to the foreclosing plaintiff.

**ANSWER:** Defendants admit that the foreclosure complaint and accompanying Memorandum in Support of Summary and Default Judgment filed by Nationstar's foreclosure counsel contained a typographical error as to the loan origination date. As for remaining allegations, denied.

39. In support of its Motion for Summary and Default Judgment, Plaintiff in the state court action submitted an Affidavit of Indebtedness dated February 18, 2025, executed by Minh Nghiem, identified as a "Document Execution Associate" at Nationstar in Dallas, Texas. Nghiem's affidavit states he has "personal knowledge of the facts in this affidavit," but then states that his knowledge is "based upon a review of Nationstar's business records." A review of business records does not constitute personal knowledge within the meaning of Indiana Trial Rule 56(E). This affidavit constitutes improper "robo-signing" and was legally insufficient to support summary judgment.

**ANSWER:** Defendants state that the allegations of ¶ 39 contain legal conclusions to which no response is required. To an extent an answer is required, denied.

40. Matthew S. Love, an attorney at Feiwell & Hannoy and counsel of record for the plaintiff in the state court action, also submitted an affidavit claiming "personal knowledge" of the debt, the payment history, and the amounts owed. An attorney of record cannot possess personal knowledge of the servicer's business records, the borrower's payment history, or the underlying financial transactions. The submission of an attorney affidavit claiming personal knowledge of matters outside that attorney's firsthand experience is legally improper under Indiana Trial Rule 56(E) and implicates Indiana Rule of Professional Conduct 3.7.

**ANSWER:** Defendants state that the allegations of ¶ 40 contain legal conclusions to which no response is required. To an extent an answer is required, denied.

41. Plaintiff submitted to the state court a pre-foreclosure default notice dated October 2023 more than one year before the January 2025 foreclosure filing. A notice issued more than one year prior to the initiation of foreclosure proceedings is stale and does not satisfy Indiana's pre-suit notice requirements under Indiana Code § 32-30-10.5.

**ANSWER:** Defendants admit that the pre-foreclosure default notice attached as Exhibit A to the foreclosure complaint was dated October 2023. As for remaining allegations, denied.

42. The attorney's fees claimed by Nationstar's foreclosure counsel and awarded in the state court judgment were $3,000.00. Billing records reflect approximately 8.83 hours of attorney time; at applicable rates, the reasonable fee was approximately $1,925.00. The excess was not supported by the evidentiary record.

**ANSWER:** Defendants admit that Summary and Default Judgment Entry and Decree of Foreclosure entered on May 15, 2025 awarded $3,000.00 in foreclosure attorneys' fees. As for remaining allegations, denied.

43. On May 15, 2025, the state court entered a default judgment against Plaintiff in the amount of $135,667.53, comprising: (a) principal of $119,348.04; (b) attorney's fees of $3,000.00; (c) prejudgment interest of $7,045.39; and (d) undisclosed fees referenced in Paragraph 28 above, which were incorporated into the judgment without disclosure to Plaintiff.

**ANSWER:** Defendants admit that Summary and Default Judgment Entry and Decree of Foreclosure entered on May 15, 2025 is in the noted amount. As for remaining allegations, denied.

44. On May 22, 2025, Plaintiff served written notice on the Wayne Superior Court clerk and on Matthew S. Love that she was asserting federal claims and seeking federal relief regarding

the subject matter of the foreclosure proceedings. This notice was accompanied by an emergency stay motion. The state court and Wintrust's counsel had actual notice of Plaintiff's pending federal claims before the July 17, 2025 sheriffs sale.

**ANSWER:** Defendants admit that Plaintiff filed an emergency stay motion and that it proceeded with foreclosure sheriff's sale on July 17, 2025, but denies remaining allegations. Answering further, Plaintiff's emergency stay motion was denied on June 17, 2025, and Plaintiff did not file her federal lawsuit until July 22, 2025.

45. On July 17, 2025, a sheriffs sale was conducted. Defendant SFC Properties LLC, controlled by Defendant Steven F. Casebolt, was the successful bidder at the price of $137,843.00. From those proceeds: (a) $135,667.53 was paid to Wintrust via Official Receipt No. 2025-11642; (b) $2,067.12 in surplus proceeds was deposited to the Wayne County Court Registry "on behalf of Wintrust Mortgage" via Official Receipt No. 2025-11640; and (c) Plaintiff received nothing. Under Indiana Code § 32-29-8-4, surplus proceeds from a foreclosure sale, after satisfaction of all liens, belong to the former homeowner. The $2,067.12 surplus has not been paid to Plaintiff.

**ANSWER:** Defendants admit that sheriff's sale was held on July 17, 2025, that SFC Properties LLC was the successful bidder at the price of $137,843.00, and that no funds were sent to Plaintiff. Answering further, Wintrust admits it received a total of $137,843.00, which represents total amount due to Wintrust from the foreclosure sheriff's sale.

46. On July 22, 2025, Plaintiff filed a federal complaint in this Court. That complaint was voluntarily dismissed after Plaintiff identified drafting errors. On August 11, 2025, Plaintiff filed the operative federal complaint, which is now being amended by this Second Amended Complaint to add Defendants SFC Properties LLC and Steven F. Casebolt and to conform the pleadings to all facts known to Plaintiff.

**ANSWER:** Admitted.

**G. CREDIT REPORTING VIOLATIONS**

47. Defendants Wintrust and Nationstar, as furnishers of information to consumer reporting agencies within the meaning of 15 U.S.C. § 1681s-2, reported information about the subject mortgage loan to four consumer reporting agencies: Equifax, Experian, TransUnion, and Innovis.

**ANSWER:** Defendants currently lack of knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore deny them, and require proof thereof.

48. The subject mortgage loan was reported under two separate account numbers — Wintrust account number ending in 10093491570 and Nationstar account number ending in 0699363693 as two separate, simultaneously delinquent mortgage accounts. These two accounts reflect the same single loan. The appearance of one loan as two separate delinquent tradelines on Plaintiff's consumer credit reports constitutes a materially inaccurate representation of Plaintiff's creditworthiness.

**ANSWER:** Defendants currently lack of knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore deny them, and require proof thereof.

49. The same account (loan number ending in 0699363693) was simultaneously reported as "Open/Never Late" (positive) on one consumer reporting agency's records and "180 days past due" (derogatory) on another consumer reporting agency's records at the same point in time. A single account cannot simultaneously be in good standing and 180 days delinquent. This contradictory reporting is inherently inaccurate and constitutes a material violation.

**ANSWER:** Defendants currently lack of knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore deny them, and require proof thereof.

50. The consumer credit reports contain additional specific inaccuracies: (a) contradictory and legally inconsistent status codes appearing simultaneously on the same account, including "Foreclosure Started" and "Payment Deferred" for the same reporting period; (b) Comment History entries bearing impossible, backwards date ranges (e.g., "Sep 2022 — Jan 2022") reflecting data corruption in what was furnished to the bureaus; (c) a wrong account opening date of August 29, 2019, consistent with the same error appearing throughout the state court filings made by Nationstar's foreclosure counsel; (d) balance amounts varying across different bureaus for the same account during the same time period; and (e) a removal date of May 2030, suggesting the first delinquency date was pegged to a later date than the actual first delinquency, artificially extending the negative reporting period.

**ANSWER:** Defendants currently lack of knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore deny them, and require proof thereof.

51. Plaintiff submitted formal disputes to consumer reporting agencies regarding the inaccuracies described in Paragraphs 47-50. The consumer reporting agencies notified Nationstar and/or Wintrust of those disputes as required by 15 U.S.C. § 1681i. Nationstar's own account records reflect the dispute process on three separate occasions: January 2023, September 2023, and May 2024. Each time, the account was marked "Account previously in dispute — investigation complete, reported by data furnisher." The phrase "reported by data furnisher" confirms that

Nationstar affirmatively submitted the account information back to the consumer reporting agencies as accurate on each of those three occasions.

**ANSWER:** Defendants currently lack of knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore deny them, and require proof thereof.

52. Following each of those three investigations, the inaccuracies described in this Complaint remained unremediated on Plaintiff's consumer credit reports. Nationstar certified materially inaccurate information as accurate to consumer reporting agencies at least three times after receiving notice of Plaintiff's disputes, in willful disregard of the accuracy of the information being furnished.

**ANSWER:** Defendants state that the allegations of ¶ 52 contain legal conclusions to which no response is required. To an extent an answer is required, Defendants deny any violations of FCRA.

53. The willfulness of Nationstar's violations is further established by the following: (a) Plaintiff had submitted two RESPA Notices of Error regarding the account before the credit disputes; (b) the Indiana AG's Office had actively engaged with Nationstar on Plaintiff's behalf; (c) Plaintiff had filed CFPB complaints; and (d) the inaccuracies were patent on the face of the data being reported (i.e., the same account showing opposite statuses on different bureaus simultaneously). Despite all of this actual notice, Nationstar continued to furnish and certify inaccurate information.

**ANSWER:** Denied.

## H. THE EVICTION PROCEEDINGS, ILLEGAL ENTRY, AND CONVERSION OF PERSONAL PROPERTY

54. At the time of the July 17, 2025 sheriffs sale, Plaintiff was in residence at 3998 Emerald Circle, Richmond, Indiana 47374. Plaintiff had never received proper notice to vacate.

**ANSWER:** Defendants lack information sufficient to admit or deny the allegations of this paragraph.

55. Following the sheriffs sale, Plaintiff executed a Trustee's Deed (Wayne County Recorder Document No. 2025005551) on July 28, 2025, recorded August 6, 2025, conveying the Property to the Browning Family Trust, an irrevocable family trust with its own Employer Identification Number. The Trustee's Deed was recorded together with a Power of Attorney, an EIN, and an Affidavit of Fact. Plaintiff also recorded a lis pendens with the Wayne County Recorder, noting the existence of this pending federal litigation. The DOXPOP title record for the parcel confirms that the only deed tied to the subject parcel is this Trustee's Deed, held by the Browning Family Trust. Defendants SFC Properties LLC, Steven Casebolt, and any subsequent purchaser took the property with actual and constructive notice of the Browning Family Trust's interest and the pending federal litigation.

**ANSWER:** Defendants lack information sufficient to admit or deny the allegations of this paragraph.

56. Steven F. Casebolt, through SFC Properties LLC, filed a small claims eviction action in Wayne Superior Court (Case No. 89D03-2507-EV-000385, later sealed) against Plaintiff before the deed to SFC Properties had even been recorded. The case style and proceedings were procedurally defective throughout:

(a) An August 5, 2025 hearing was scheduled before Plaintiff had been properly served; the alias summons was issued only after the hearing had already occurred;

(b) On August 14, 2025, Casebolt filed a Certificate of Service claiming hand delivery of service; MyCase docket records confirm that service was not completed until August 20, 2025, establishing that the Certificate of Service contained a false representation;

(c) On August 12, 2025, Casebolt failed to appear for the scheduled hearing; the court records reflect dismissal and sealing of the prior case; the dismissed case was then rolled into a new cause number, fragmenting the record and obscuring the prior dismissal;

(d) An emergency possession order filed by Casebolt was denied by the court.

**ANSWER:** Defendants lack information sufficient to admit or deny the allegations of this paragraph.

57. On September 2, 2025, a hearing was held. Plaintiff was unable to physically appear at the courthouse due to her documented housebound status under 38 C.F.R. § 3.351, constituting a disability within the meaning of the Americans with Disabilities Act and the Fair Housing Act. Plaintiff made repeated requests for remote access and ADA accommodations. Those requests were denied.

**ANSWER:** Defendants lack information sufficient to admit or deny the allegations of this paragraph.

58. On September 16, 2025, the court issued a stay pending appeal, which by operation of law suspended enforcement of any possession order. Three days later, on September 19, 2025, the court issued a separate order directing that eviction be carried out on September 23, 2025, at 9:00 a.m. These two orders — a stay pending appeal entered September 16 and an eviction execution order entered September 19 — are irreconcilable. A stay pending appeal suspends enforcement of the judgment below; an eviction order issued three days after a stay directs precisely the enforcement the stay prohibits. The issuance of the September 19 eviction order in direct contravention of the September 16 stay denied Plaintiff any coherent legal footing and constituted a deprivation of her due process rights under the Fourteenth Amendment.

**ANSWER:** Defendants lack information sufficient to admit or deny the allegations of this paragraph.

59. On September 23, 2025, Steven F. Casebolt, accompanied by a Wayne County Sheriffs deputy, entered Plaintiff's home at 3998 Emerald Circle, Richmond, Indiana, purportedly under the September 23 possession order. At the time of entry: (a) the simultaneously issued stay order was in effect; (b) the Browning Family Trust Trustee's Deed and lis pendens were of record; (c) this federal action was pending; and (d) Plaintiff was out of state and therefore not present.

**ANSWER:** Defendants lack information sufficient to admit or deny the allegations of this paragraph.

60. On the day of entry, camera footage captured Casebolt discussing Plaintiff's situation with the accompanying deputy and acknowledging that Plaintiff clearly lived at the property. Plaintiff's son attempted to access the property and was denied entry.

**ANSWER:** Defendants lack information sufficient to admit or deny the allegations of this paragraph.

61. On September 23, 2025, and in the days and weeks following, Casebolt and/or his agents removed, destroyed, or converted the following personal property belonging to Plaintiff: jewelry; appliances; furniture; clothing; children's toys; bicycles; and children's clothing. Casebolt used Plaintiff's utilities and personal property from Plaintiff's garage — including light fixtures — to perform renovations on the Property. Plaintiff's personal property that was not taken was left in a damaged or destroyed condition. A portion was placed in storage; those items are largely broken.

**ANSWER:** Defendants lack information sufficient to admit or deny the allegations of this paragraph.

62. Casebolt subsequently sold the Property to a third-party buyer, employing his daughter-in-law as the real estate agent for the transaction. Photographs of the Property published on Realtor.com in connection with the resale listing displayed Plaintiff's personal furniture, confirming the identity and presence of Plaintiff's belongings on the premises at the time of and following the entry.

**ANSWER:** Defendants lack information sufficient to admit or deny the allegations of this paragraph.

63. At the time of the September 23, 2025 entry, Casebolt had actual and constructive notice of: the pending federal litigation; the Browning Family Trust's recorded interest; and Plaintiff's disability status, as Plaintiff had given Casebolt repeated written notices of her disability by e-filing and personal service to his residence. Casebolt never filed any additional responsive pleadings in the eviction proceedings after his original filing.

**ANSWER:** Defendants lack information sufficient to admit or deny the allegations of this paragraph.

64. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages including: the value of all personal property taken or destroyed; $11,000.00 for new siding on the Property (receipt available); storage fees; relocation and rental expenses; damage to Plaintiff's credit and financial standing; and severe emotional distress. A complete itemized list of personal property losses is in preparation and will be provided through discovery.

**ANSWER:** Defendants lack information sufficient to admit or deny the allegations of this paragraph.

65. The cumulative harm inflicted upon Plaintiff — including being called a liar when seeking disability accommodation, having her home lost through a proceeding riddled with federal

violations, having all of her family's belongings taken while she was out of state, having her son denied access to her property, and having her furniture displayed in a commercial property listing was so severe, sustained, and outrageous that it rendered Plaintiff emotionally unable to pursue the available state court appellate remedies. This incapacitation was itself a direct consequence of Defendants' conduct. The federal court in this action has taken judicial notice of the state court eviction proceedings.

**ANSWER:** Defendants lack information sufficient to admit or deny the allegations of this paragraph. Answering further, Defendants deny any wrongdoings or referenced violations.

**SECTION IV - CLAIMS FOR RELIEF**
**CLAIM ONE: VIOLATION OF THE TRUTH IN LENDING ACT - RIGHT OF RESCISSION**

**15 U.S.C. § 1635; Regulation Z, 12 C.F.R. § 226.23**
**(Against Wintrust and Nationstar)**

66. Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER:** Defendants incorporate their answers to all preceding paragraphs.

67. The subject mortgage loan is a residential mortgage transaction subject to TILA and Regulation Z. Under 15 U.S.C. § 1635 and 12 C.F.R. § 226.23, Plaintiff had the right to rescind the transaction.

**ANSWER:** Defendants admit that the subject mortgage loan was subject to TILA and Regulation Z, but deny remaining allegations of ¶ 67.

68. Where a creditor fails to make required material disclosures, the rescission period is extended to three years from the date of consummation. The Closing Disclosure for the August 24, 2019 transaction contained material misstatements, including the mislabeling of Plaintiff's VA disability income as "retirement income" and the inclusion of undisclosed income added without Plaintiff's knowledge or authorization. The Closing Disclosure was transmitted by text message

for digital signature rather than personally delivered. These failures to make accurate material disclosures extended Plaintiff's rescission right through August 24, 2022, and the equitable tolling doctrine further extends this period due to the concealment of the origination fraud, which prevented Plaintiff from timely discovering the basis for rescission.

**ANSWER:** Defendants admit that 15 U.S.C. § 1638 and Regulation Z provide for a right of rescission, but deny all remaining allegations of ¶ 68.

69. Plaintiff served a notice of rescission in June 12, 2025. Neither Wintrust nor Nationstar has honored that rescission notice.

**ANSWER:** Denied that the June 12, 2025 was a "notice of rescission." Answering further, Defendants assert that Plaintiff no longer had a right to rescind the subject loan in June 2025.

70. Upon rescission, Defendants are obligated under 15 U.S.C. § 1635(b) to return all payments made and to release their security interest in the Property. SFC Properties LLC and Casebolt, having purchased the Property with actual and constructive notice of the pending federal litigation and the Browning Family Trust's recorded interest, are not bona fide purchasers for value within the meaning of 15 U.S.C. § 1635(b), and rescission is effective as against them.

**ANSWER:** Defendants state that the allegations of ¶ 70 contain legal conclusions to which no response is required. To an extent an answer is required, Defendants deny any wrongdoing or obligations under 15 U.S.C. § 1635(b).

## CLAIM TWO: VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

**12 U.S.C. § 2605; 12 C.F.R. §§ 1024.35, 1024.39, 1024.41**
**(Against Wintrust and Nationstar)**

71. Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER:** Defendants incorporate their answers to all preceding paragraphs.

72. The subject mortgage loan is a "federally related mortgage loan" subject to RESPA and its implementing regulations (Regulation X).

**ANSWER:** Defendants state that the allegations of ¶ 72 contain legal conclusions to which no response is required

73. Nationstar violated 12 C.F.R. § 1024.41 by engaging in dual tracking — simultaneously pursuing foreclosure while IHAF was actively making payments on Plaintiff's behalf, during a period when the loan was required to be treated as in a loss mitigation status.

**ANSWER:** Denied.

74. Nationstar caused unauthorized, undisclosed fees totaling at least $5,984.91 (comprising escrow advances of $4,994.91, inspection fees of $450.00, appraisal fees of $200.00, and title evidence fees of $340.00) to be added to Plaintiff's account and incorporated into the state court foreclosure judgment without disclosure or authorization as required by RESPA and Regulation X.

**ANSWER:** Upon information and belief, Defendants admit that these referenced amounts were included in the judgment and decree of foreclosure entered on May 15, 2025. As for remaining allegations, Defendants state that those allegations contain legal conclusions to which no response is required. To an extent an answer is required, Defendants deny any violations.

75. As a direct and proximate result of these violations, Plaintiff suffered actual damages including, but not limited to, the inclusion of unauthorized fees in the foreclosure judgment, damage to her creditworthiness, and costs associated with the foreclosure proceeding.

**ANSWER:** Denied.

**CLAIM THREE: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**

**15 U.S.C. § 1692 et seq.**

**(Against Nationstar)**

76. Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER:** Defendants incorporate their answers to all preceding paragraphs.

77. Nationstar, acting through its foreclosure counsel, engaged in debt collection activity subject to 15 U. S.C. § 1692 et seq. Nationstar's foreclosure counsel is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6), as it regularly collects consumer mortgage debts through the filing of foreclosure actions on behalf of mortgage servicers and lenders, and its acts in connection with the collection of this debt are attributable to Nationstar as the principal.

**ANSWER:** Defendants state that those allegations contain legal conclusions to which no response is required. To an extent an answer is required, Defendants deny any violations.

78. On January 13, 2025, Nationstar's foreclosure counsel sent Plaintiff a collection letter. Under 15 U. S.C. § 1692g, Plaintiff had 30 days from receipt of that letter to dispute the debt before any further collection activity was permitted. Counsel acting on behalf of Nationstar filed the foreclosure complaint on January 14, 2025 — one business day after sending the collection letter without waiting for the expiration of the 30-day dispute period, in violation of 15 U.S.C. § 1692g.

**ANSWER:** Defendants admit that Defendants' foreclosure counsel sent Plaintiff letter dated January 13, 2025. As for remaining allegations, those allegations contain legal conclusions to which no response is required. To an extent an answer is required, Defendants deny any violations.

79. Nationstar's foreclosure counsel made false, deceptive, and misleading representations in connection with the collection of the subject debt in violation of 15 U.S.C. §

1692e, including: submitting the robo-signed Affidavit of Indebtedness of Minh Nghiem as evidence of personal knowledge; submitting the attorney affidavit of Matthew S. Love falsely claiming personal knowledge of the underlying debt; and representing the loan origination date in state court filings as August 29, 2019, when the correct date was August 24, 2019.

**ANSWER:** Denied.

80. Steven F. Casebolt filed a Certificate of Service in the Wayne County Small Claims eviction proceeding falsely representing that personal hand delivery of service was accomplished on August 14, 2025, when MyCase docket records confirm service was not completed until August 20, 2025. To the extent Casebolt was acting as an agent of the debt collection effort, this false representation violates 15 U.S.C. § 1692e.

**ANSWER:** Denied.

81. As a direct and proximate result of these violations, Plaintiff is entitled to actual damages, statutory damages of $1,000.00 per violation, and attorney's fees and costs pursuant to 15 U.S.C. § 1692k.

**ANSWER:** Plaintiff's allegations in ¶ 81 of the Complaint touch and concern Plaintiff's alleged damages and asserts conclusions/or contentions of law to which no response is required. To an extent, if any, a response is required, the allegations of this paragraph are denied.

**CLAIM FOUR: VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681s-2(b)**
**(Against Nationstar and Wintrust)**

81. Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER:** Defendants incorporate their answers to all preceding paragraphs.

82. Defendants Nationstar and Wintrust are "furnishers of information" to consumer reporting agencies within the meaning of 15 U.S.C. § 1681s-2.

**ANSWER:** Defendants admit that it furnishes information to consumer reporting agencies. Defendants deny the remaining allegations in ¶ 82.

83. Plaintiff submitted disputes to consumer reporting agencies regarding the inaccurate information furnished by Nationstar and Wintrust, as described in Paragraphs 47-53 above. The consumer reporting agencies notified Nationstar and Wintrust of those disputes. Upon receiving notice of those disputes, Nationstar and Wintrust were required by 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation, review all relevant information provided, and correct or delete inaccurate information.

**ANSWER:** Defendants state that those allegations contain legal conclusions to which no response is required. To an extent an answer is required, Defendants deny any violations.

84. Nationstar failed to conduct a reasonable investigation. Nationstar affirmatively certified the disputed information as accurate on at least three separate occasions — January 2023, September 2023, and May 2024 — without correcting the patent inaccuracies described in this Complaint, including the simultaneous reporting of the same account as both “Open/Never Late” and “180 days past due” on different bureaus.

**ANSWER:** Denied.

85. Nationstar’s violations were willful, within the meaning of 15 U.S.C. § 1681n, in that Nationstar acted in reckless disregard of its duties as a furnisher when it repeatedly certified manifestly contradictory and inaccurate information as accurate after receiving multiple forms of actual notice of the inaccuracies.

**ANSWER:** Defendants state that those allegations contain legal conclusions to which no response is required. To an extent an answer is required, denied.

86. As a direct and proximate result of Nationstar's willful FCRA violations, Plaintiff suffered actual damages including damage to her credit profile, inability to obtain alternative financing during the foreclosure period, and emotional distress. Plaintiff is entitled to statutory damages between $100 and $1,000 per violation, punitive damages, and attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

**ANSWER:** Defendants state that the allegations of ¶ 86 contain legal conclusions to which no response is required. To an extent an answer is required, Defendants lack information sufficient to admit or deny the allegations of this paragraph. Answering further, Defendants deny any wrongdoing.

**CLAIM FIVE: VIOLATION OF THE FAIR HOUSING ACT – DISABILITY DISCRIMINATION**
**42 U.S.C. §§ 3604(f), 3605**
**(Against Wintrust and Nationstar)**

87. Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER:** Defendants incorporate their answers to all preceding paragraphs.

88. Plaintiff is a person with a disability within the meaning of 42 U.S.C. § 3602(h), in that she has a physical and mental impairment — service-connected PTSD with documented housebound status under 38 C.F.R. § 3.351 — that substantially limits one or more major life activities.

**ANSWER:** Defendants state that those allegations contain legal conclusions to which no response is required. To an extent an answer is required, Defendants lack information sufficient to admit or deny the allegations of this paragraph.

89. Defendant Wintrust, at the time of origination, had knowledge of Plaintiff's disability through the disability income appearing on her loan file, which its own loan officer deliberately mislabeled as "retirement income." Wintrust's failure to accurately characterize

Plaintiff's income type — in a manner that would have entitled Plaintiff to different and more accurate disclosure and underwriting treatment — constitutes discrimination in the terms, conditions, and privileges of a residential mortgage transaction on the basis of disability, in violation of 42 U.S.C. § 3605.

**ANSWER:** Upon information and belief, denied.

90. Defendant Nationstar, in November 2022, received direct, explicit notice of Plaintiff's disability when Plaintiff called and disclosed her PTSD and VA housebound status. Rather than engaging in the interactive process required by the Fair Housing Act and offering any reasonable accommodation in the terms of servicing, Nationstar's representative denied Plaintiff's accommodation request and called her a liar, in violation of 42 U.S.C. §§ 3604(f)(3)(B) and 3605.

**ANSWER:** Upon information and belief, denied.

91. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered actual damages including the loss of her home, destruction of her credit, loss of personal property, and severe emotional distress. Plaintiff is entitled to compensatory damages, punitive damages, injunctive relief, and attorney's fees and costs pursuant to 42 U.S.C. § 3613.

**ANSWER:** Defendants state that the allegations of ¶ 91 contain legal conclusions to which no response is required. To an extent an answer is required, Defendants lack information sufficient to admit or deny the allegations of this paragraph. Answering further, Defendants deny any wrongdoing.

**CLAIM SIX: FRAUD IN THE INDUCEMENT**

**(Against Wintrust, under Indiana law and federal supplemental jurisdiction)**

92. Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER:** Defendants incorporate their answers to all preceding paragraphs.

93. Defendant Wintrust, through its loan officer Denitra Cosby, made material misrepresentations and omissions in connection with the origination of the August 24, 2019 mortgage loan: (a) deliberately mislabeling Plaintiff's VA disability income as "retirement income" on the Closing Disclosure; (b) adding undisclosed nanny income to the loan application without Plaintiff's knowledge or authorization and representing to Plaintiff that this was permissible; and (c) transmitting the Closing Disclosure by text message rather than personally delivering it, depriving Plaintiff of a meaningful opportunity to review the disclosure and understand the transaction.

**ANSWER:** Defendants state that the allegations of ¶ 93 contain legal conclusions to which no response is required. To an extent an answer is required, denied.

94. These misrepresentations were material, in that they affected the terms, accuracy, and validity of the loan transaction and the disclosures required by federal law. Plaintiff reasonably relied on the representations made by Wintrust's loan officer. As a result of this fraud in the inducement, Plaintiff entered into a mortgage transaction on terms and with disclosures that did not accurately reflect her financial situation or her legal rights.

**ANSWER:** Defendants state that the allegations of ¶ 94 contain legal conclusions to which no response is required. To an extent an answer is required, denied.

95. As a direct and proximate result of Wintrust's fraud in the inducement, Plaintiff suffered damages including the initiation of a mortgage transaction on false pretenses, the loss of her home, and all consequential damages flowing therefrom.

**ANSWER:** Plaintiff's allegations in Paragraph 95 of the Complaint touch and concern Plaintiff's alleged damages and assert conclusions and/or contentions of law to which no response

is required. To the extent, if any, a response is required, the allegations of this paragraph are denied.

**CLAIM SEVEN: WRONGFUL FORECLOSURE**
**(Against Wintrust and Nationstar, under Indiana law)**

**Count Seven was dismissed by this Court's order entered on September 25, 2026.**

**CLAIM EIGHT: CONVERSION OF PERSONAL PROPERTY**
**(Against SFC Properties LLC and Steven F. Casebolt, under Indiana law)**

105. Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER:** Defendants incorporate their answers to all preceding paragraphs.

106. Defendants SFC Properties LLC and Steven F. Casebolt intentionally exercised dominion and control over Plaintiff's personal property — including jewelry, appliances, furniture, clothing, children's toys, bicycles, children's clothing, and light fixtures and other garage property without Plaintiff's consent and without lawful authority.

**ANSWER:** Defendants do not answer this paragraph because the allegations are not directed towards them. To the extent an answer is required, or the allegations are asserted against Defendants, the allegations are denied.

107. The possession order under which Casebolt claims to have acted was issued simultaneously with a stay order by the same court, rendering the possession order's legal authority uncertain and insufficient to authorize the destruction and conversion of personal property that Casebolt carried out. Regardless of the possession order, no law authorizes a purchaser to take, sell, destroy, or convert a former homeowner's personal property.

**<u>ANSWER:</u>** Defendants do not answer this paragraph because the allegations are not directed towards them. To the extent an answer is required, or the allegations are asserted against Defendants, the allegations are denied.

108. Plaintiff's furniture was visible in Realtor.com listing photographs published in connection with the subsequent resale of the Property by Casebolt using his daughter-in-law as the real estate agent, confirming the identity and presence of Plaintiff's belongings.

**<u>ANSWER:</u>** Defendants do not answer this paragraph because the allegations are not directed towards them. To the extent an answer is required, or the allegations are asserted against Defendants, the allegations are denied.

109. Plaintiff also suffered the loss of $11,000.00 in new siding she had installed on the Property, which transferred to Casebolt's benefit upon the resale of the Property.

**<u>ANSWER:</u>** Defendants do not answer this paragraph because the allegations are not directed towards them. To the extent an answer is required, or the allegations are asserted against Defendants, the allegations are denied.

110. As a direct and proximate result of Defendants' conversion, Plaintiff suffered actual damages in an amount to be determined at trial, including the fair market value of all personal property taken or destroyed, storage fees, and relocation expenses. An itemized list will be provided in discovery.

**<u>ANSWER:</u>** Defendants do not answer this paragraph because the allegations are not directed towards them. To the extent an answer is required, or the allegations are asserted against Defendants, the allegations are denied.

**CLAIM NINE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (Against Wintrust, Nationstar, SFC Properties LLC, and Steven F. Casebolt, under Indiana law)**

111. Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER:** Defendants incorporate their answers to all preceding paragraphs.

112. The conduct of Defendants, individually and collectively, was extreme and outrageous and was either intended to cause, or was carried out with reckless disregard of the likelihood of causing, severe emotional distress to Plaintiff.

**ANSWER:** Defendants state that the allegations of ¶ 112 contain legal conclusions to which no response is required. To an extent an answer is required, denied.

113. The extreme and outrageous conduct includes: calling Plaintiff a liar when she disclosed her service-connected PTSD and sought accommodation; initiating a VA-prohibited foreclosure without meeting a single mandatory pre-foreclosure contact requirement; reporting inaccurate and contradictory information on Plaintiff's credit reports and certifying that information as accurate three times after notice; filing a foreclosure action using affidavits that falsely claimed personal knowledge; entering Plaintiff's home while she was out of state; removing all of her family's possessions; denying Plaintiff's son access to his own belongings; displaying Plaintiff's personal furniture in a commercial property listing; and selling the Property using a related party as the realtor for profit.

**ANSWER:** Defendants state that the allegations of ¶ 113 contain legal conclusions to which no response is required. To an extent an answer is required, denied.

114. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff suffered, and continues to suffer, severe emotional distress of such intensity and duration that no reasonable person could be expected to endure it, including, but not limited to, the

exacerbation of her service-connected PT SD, emotional incapacitation, loss of the ability to pursue available legal remedies, and ongoing trauma. Plaintiff is entitled to compensatory and punitive damages.

**ANSWER:** Plaintiff's allegations in ¶ 114 of the Complaint touch and concern Plaintiff's alleged damages and assert conclusions and/or contentions of law to which no response is required. To the extent, if any, a response is required, the allegations of this paragraph are denied.

**CLAIM TEN: UNJUST ENRICHMENT**
**(Against SFC Properties LLC and Steven F. Casebolt, under Indiana law)**

115. Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER:** Defendants incorporate their answers to all preceding paragraphs.

116. Defendants SFC Properties LLC and Steven F. Casebolt were unjustly enriched at Plaintiff's expense by: (a) using Plaintiff's utilities and personal property to perform renovations on the Property for which they paid nothing; (b) incorporating $11,000.00 in siding improvements paid for by Plaintiff into the value of the Property for resale; (c) taking and retaining Plaintiff's personal property; and (d) selling the Property for profit with knowledge of the pending federal litigation and the Browning Family Trust's recorded interest.

**ANSWER:** Defendants do not answer this paragraph because the allegations are not directed towards them. To the extent an answer is required, or the allegations are asserted against Defendants, the allegations are denied.

117. It would be inequitable and unjust for Defendants to retain the benefit of Plaintiff's property and improvements under these circumstances.

**ANSWER:** Defendants do not answer this paragraph because the allegations are not directed towards them. To the extent an answer is required, or the allegations are asserted against Defendants, the allegations are denied.

**CLAIM ELEVEN: TRESPASS / WRONGFUL ENTRY**
**(Against SFC Properties LLC and Steven F. Casebolt, under Indiana law)**

118. Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER:** Defendants incorporate their answers to all preceding paragraphs.

119. On September 23, 2025, Defendants SFC Properties LLC and Steven F. Casebolt entered Plaintiff's residence at 3998 Emerald Circle, Richmond, Indiana, under a possession order that was issued simultaneously with a stay order, rendering its legal authority as the basis for physical entry legally insufficient.

**ANSWER:** Defendants do not answer this paragraph because the allegations are not directed towards them. To the extent an answer is required, or the allegations are asserted against Defendants, the allegations are denied.

120. At the time of entry, the Browning Family Trust's Trustee's Deed and the lis pendens were of record, providing actual and constructive notice that the Property was subject to a competing interest and pending federal litigation. Plaintiff had given Casebolt written disability notices by e-filing and personal service to his residence. The entry was accomplished in the absence of Plaintiff, who was out of state, and over the objection of Plaintiff's son, who was denied access.

**ANSWER:** Defendants do not answer this paragraph because the allegations are not directed towards them. To the extent an answer is required, or the allegations are asserted against Defendants, the allegations are denied.

121. As a direct and proximate result of this wrongful entry, Plaintiff suffered the loss of all personal property, displacement from her residence, storage and rental expenses, and severe emotional distress.

**ANSWER:** Defendants do not answer this paragraph because the allegations are not directed towards them. To the extent an answer is required, or the allegations are asserted against Defendants, the allegations are denied.

**CLAIM TWELVE: CIVIL CONSPIRACY**
**(Against Wintrust and Nationstar)**

122. Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER:** Defendants incorporate their answers to all preceding paragraphs.

123. Defendants Wintrust and Nationstar, by express or implied agreement, engaged in a coordinated course of conduct designed to deprive Plaintiff of her property and her legal rights, including: (a) Wintrust's origination of the loan using fraudulently characterized income, laying the groundwork for a servicing relationship built on inaccurate financial data; (b) the coordinated furnishing of conflicting and inaccurate credit reporting data to multiple consumer reporting agencies, with the same loan appearing as open and current on one bureau and severely delinquent on another; (c) Nationstar's affirmative certification of inaccurate information as accurate on three separate occasions following notice of disputes that should have prompted correction; and (d) the collective failure to disclose or correct the unauthorized fees added to the foreclosure judgment, fees that Nationstar added and Wintrust's successor interest benefited from.

**ANSWER:** Denied.

124. Each Defendant committed one or more overt acts in furtherance of the conspiracy, causing damages to Plaintiff as described throughout this Complaint.

**ANSWER:** Denied.

**CLAIM THIRTEEN: DECLARATORY RELIEF**
**28 U.S.C. § 2201; Fed. R. Civ. P. 57**
**(Against all Defendants)**

**Count Thirteen was dismissed by this Court's order entered on September 25, 2026.**

## AFFIRMATIVE DEFENSES

In further response to Plaintiff's Second Amended Complaint, Defendants assert the following affirmative defenses, without conceding that it bears the burden of persuasion as to any of them:

### FIRST AFFIRMATIVE DEFENSE
### (TRUTH/ACCURACY OF INFORMATION)

All claims against Nationstar are barred because all information Defendants communicated to any third person regarding Plaintiff was true.

### SECOND AFFIRMATIVE DEFENSE
### (RATIFICATION)

All claims related to TILA, RESPA, fraud, or conspiracy, as related to loan origination were ratified by Plaintiff's explicit approval and signing of the application, and acceptance the benefits of the loan proceeds.

### THIRD AFFIRMATIVE DEFENSE
### (COMPARATIVE FAULT)

Defendants are informed and believe and thereon allege that any alleged damages sustained by Plaintiff were, at least in part, caused by the actions of Plaintiff herself and/or third parties and resulted from Plaintiff's or third parties' own negligence which equaled or exceeded any alleged negligence or wrongdoing by Defendants.

### FOURTH AFFIRMATIVE DEFENSE
### (ESTOPPEL)

Any damages which Plaintiff may have suffered, which Defendants continue to deny, were the direct and proximate result of the conduct of Plaintiff. Therefore, Plaintiff is estopped and barred from recovery of any damages.

**FIFTH AFFIRMATIVE DEFENSE**
**(INDEPENDENT INTERVENING CAUSES)**

If Plaintiff sustained any of the injuries alleged in the Second Amended Complaint, there may have been an intervening, superseding cause and/or causes leading to such alleged injuries and, as such, any action on the part of Defendants was not a proximate cause of the alleged injuries.

**SEVENTH AFFIRMATIVE DEFENSE**
**(FAILURE TO STATE A CLAIM)**

The Second Amended Complaint herein, and each cause of action thereof, fails to set forth facts sufficient to state a claim upon which relief may be granted against Defendants and further fails to state facts sufficient to entitle Plaintiff to the relief sought, or to any other relief whatsoever from Defendants.

**EIGHT AFFIRMATIVE DEFENSE**
**(STATUTE OF LIMITATIONS)**

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

**NINTH AFFIRMATIVE DEFENSE**
**(CLAIMS ARE BARRED UNDER 15 U.S.C. 1681h(e))**

Plaintiff's claims are barred, in whole or in part, by the limitations imposed by 15 U.S.C. 1681h(e).

**RESERVATION OF RIGHTS TO ASSERT ADDITIONAL DEFENSES**

Defendants reserve the right to assert additional affirmative defenses at such time and to such extent as warranted by discovery and the factual developments in this case.

WHEREFORE, Defendants Nationstar Mortgage LLC d/b/a Mr. Cooper and Wintrust Mortgage, a Division of Barrington Bank and Trust Co., NA pray that Plaintiff takes nothing by

her claims; Plaintiff's claims be dismissed with prejudice; and that Defendants be awarded its attorneys' fees, costs, and all further relief to which it may be justly entitled at law or in equity.

Dated: October 30, 2026

Respectfully submitted,
**DYKEMA GOSSETT PLLC**

By: /s/ Paulina Garga-Chmiel
Paulina Garga-Chmiel (36711-45)
DYKEMA GOSSETT PLLC
10 S. Wacker Dr., Suite 2300
Chicago, IL 60606
(312) 876-1700
*Attorneys for Defendants Nationstar Mortgage LLC and Wintrust Mortgage, a Division of Barrington Bank and Trust Co. NA*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2026 a copy of the foregoing was served upon registered users via Court's CM/ECF filing system and via U.S. Mail to the following parties:

Michelle Browning
15 Brasseler Blvd, Apt. B26
Savannah, GA 31419
*Pro Se Plaintiff*

By: /s/ Paulina Garga-Chmiel